NATIONAL RAILROAD PASSENGER
CORP., Plaintiff,

v.

NEW YORK CITY HOUSING AUTH. and
Robert Born Assocs., Defendants.

ROBERT BORN ASSOCS.,
Third-party plaintiff,

v.

The DESPATCH SHOPS, INC.; Lawrence Silverstein; Harry Silverstein; Bernard Mendik; Motel City, Inc.; Motel City C Assocs.; The Travelodge Corp.; and Travelodge Int'l, Inc., Third-party defendants.

No. 91 Civ. 4945 (JSM).

United States District Court,
S.D. New York.

April 15, 1993.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

There are before the Court various motions to dismiss the complaint, third-party complaint, and third-party cross-claims, either in their entirety or in part, pursuant to FED.R.CIV.PRO. 12(b)(6) and 12(c), for fail-

ure to state a claim upon which relief can be granted.

## Background

Plaintiff National Railroad Passenger Corp. (Amtrak) owns tracks which are built in a cut, or depression, in the earth in Manhattan (the Westside line). The defendants, New York City Housing Authority (NYCHA) and Robert Born Assocs. (Born), are owners of the land upon which the tracks were built and buildings which were constructed over the tracks. The tracks are laid across defendants' properties on easements.

The third-party defendants are: The Despatch Shops (Despatch), the former owner of the property now owned by defendant Born at the time the building was erected; Lawrence Silverstein and Harry Silverstein (deceased), Bernard Mendik, Motel City, Inc. (adjudicated bankrupt), and Motel City C Assocs., collectively the previous lessee of the Born property that built the structure in question (hereinafter "Motel Defendants"); and Travelodge Corp. and Travelodge Int'l, Inc., (collectively Travelodge) the lessee of the Born property until 1979, on a lease assigned to Travelodge by the Motel Defendants in 1964.

The Westside line predates the buildings. The buildings were constructed on steel pillars placed between and beside the tracks by the Motel Defendants and NYCHA. During construction these pillars and the bottoms of the buildings were coated with asbestos containing material (ACM) to protect the buildings from fire.

In 1986, Amtrak undertook to renovate the Westside line in order to reopen service on these tracks. During renovation, it was discovered that ACM had been and was still flaking off the pillars and undersides of the buildings and falling on the tracks. Amtrak notified the owners of the buildings of the problem in November 1989, and sought to negotiate the removal of the ACM in a timely fashion. The operable time constraint was the self-imposed timetable for reconstruction that Amtrak was pursuing. NYCHA and Born allegedly sought to evade responsibility for removal of the ACM. Amtrak finally hired private contractors to remove the as-

bestos and notified NYCHA and Born that it had done so. The work was performed during May through July 1990.

Plaintiff claims that Born and NYCHA are liable for the costs of investigation, and clean-up and replacement of the ACM (response costs) under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C.A. § 9601, et seq. (1983 & Supp.1992) [hereinafter CERCLA], also known as the Superfund. Plaintiff has also asserted claims for intentional and negligent private nuisance, nuisance based upon ultrahazardous activity, trespass, restitution and indemnity, breach of covenants, and a claim based on a violation of the City building code. Defendants move to dismiss these claims.

Born seeks indemnification or contribution from the third-party defendants. Third-party defendants move to dismiss these claims.

Travelodge seeks contribution or indemnification from defendants and third-party defendants. Defendant NYCHA moves to dismiss these claims.

## Discussion

"[A] complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This standard applies to motions to dismiss under both FED.R.CIV.PRO. 12(b)(6) and 12(c). *New York v. SCA Servs., Inc.,* 754 F.Supp. 995 (S.D.N.Y.1991).

## I. PLAINTIFF'S CLAIMS

### A. *CERCLA*

 To withstand the motion to dismiss its CERCLA claims, plaintiff must have alleged the five elements of a *prima facie* claim which are:

(1) defendant fits one of four classes of responsible parties outlined in § 9607(a);

(2) the site is a facility;

(3) there is a release or threatened release of hazardous substances at the facility;

(4) the plaintiff incurred costs responding to the release or threatened release; and

(5) the costs and response actions conform to the National Contingency Plan set up under the Act and administered by the EPA in order to prioritize hazardous substance release sites throughout the nation.

*B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992).

■ As a preliminary matter it is important to note that asbestos is a hazardous substance for purposes of CERCLA. *3550 Stevens Creek Assoc. v. Barclays Bank,* 915 F.2d 1355, 1361 (9th Cir.1990).

The disposition of much of this motion depends upon whether or not the sites in question are facilities for CERCLA purposes. CERCLA defines "facility" as "(A) any building, structure, installation, pipe, pipeline ..., or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel...." 42 U.S.C.A. § 9601(9).

■ Defendants assert that the ACM was a consumer product in consumer use when applied to the building structures and is therefore excluded from the meaning of "facility." However, given that the "consumer products" exclusion is located in the definition of "facility", a definition clearly addressing locations covered by CERCLA, the relevant question actually pertains to the location of the hazardous substance which is a consumer product in consumer use, not merely the use to which the substance was put. *See People v. Blech,* 976 F.2d 525, 527 & n. 1 (9th Cir.1992) (explaining holding of *3550 Stevens Creek Assocs.,* 915 F.2d 1355) (building constructed with asbestos a facility); *CP Holdings, Inc. v. Goldberg–Zoino Assocs.,* 769 F.Supp. 432, 438–39 (D.N.H. 1991) (hotel constructed with asbestos a facility); *New York v. General Elec. Co.,* 592 F.Supp. 291 (N.D.N.Y.1984) (drag strip sprayed with transformer oil to keep down

dust a facility); *Electric Power Bd. v. Westinghouse Elec. Corp.,* 716 F.Supp. 1069 (E.D.Tenn.1988) (transformer containing PCB's not a facility). *But see Dayton Indep. School Dist. v. U.S. Mineral Prods.,* 906 F.2d 1059, 1065–66 (5th Cir.1990) (ACM used as building material so building not a facility). Thus, the proper approach is to construe the "consumer product in consumer use" exclusion from the broad definition of "facility" to mean the term does not encompass consumer products in consumer use which are, in effect, containers of hazardous substances, such as transformers which contain PCB's.

In this case, the support pillars and the undersides of the buildings were themselves coated with ACM. The ACM was not, for instance, contained in drums waiting to be put to a consumer use, in which case the drums would not be facilities. Therefore, the consumer products exception does not apply.

Thus, the buildings and tracks are facilities for CERCLA purposes, since, as defendants conceded at argument, they were sites where a hazardous substance had come to be located.

The second element of a CERCLA claim is that defendants fall within one of four classes of responsible parties. Plaintiff asserts that the defendants are responsible parties covered by CERCLA by virtue of being: 1) "the owner and operator of ... a facility"; and 2) "[a] person who by contract, agreement, or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such person ... at any facility owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C.A. § 9607(a)(1), (3).

■ The parties dispute whether the defendants are covered parties by virtue of arranging for disposal of hazardous wastes at a facility. Plaintiff asserts that by the defendants' failure to maintain the ACM in a non-friable condition, they arranged for the disposal of the ACM onto the tracks.

Disposal includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing" of any hazardous substance so that the substance "may enter the environment." 42 U.S.C.A. § 9601(29) (incorporating by refer-

ence the definition in Solid Waste Disposal Act, 42 U.S.C.A. § 6903 (1983 & Supp.1992)). Defendants argue that an affirmative act is required to find that they arranged for disposal. This argument, however, misconstrues the point. The cases cited by defendants would apply to relieve the party who sold the ACM to the NYCHA and Born of liability for the disposal situation which later arose. *See, e.g., Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313 (11th Cir.1990); *Prudential Ins. Co. v. U.S. Gypsum Co.,* 711 F.Supp. 1244, 1253–55 (D.N.J. 1989). They do not serve to relieve the instant defendants from liability for arranging for disposal of the ACM.

Plaintiff alleges that the defendants made the affirmative decision to not remove the ACM from their sites after being notified of the problem by plaintiff. They knew that this decision meant that in the absence of someone else's intervention the ACM would continue to flake off onto the tracks. "[L]iability under [§ 9607(a)(3) ] ends with the party who 'made the crucial decision' how the hazardous substances would be disposed of or treated." *Jersey City Redev. Auth. v. PPG Indus.,* 655 F.Supp. 1257, 1260 (D.N.J. 1987) (quoting *United States v. A & F Materials Co.,* 582 F.Supp. 842, 845 (S.D.Ill.1984)).

Thus, defendants are "person[s] who ... arranged for disposal ... of hazardous substances owned or possessed by such person[s] ... at any facility owned or operated by another party or entity...." 42 U.S.C.A. § 9607(a)(3).2

■ In any event, defendants do not contest the fact that they are the owners and operators of their respective facilities and so are covered persons under CERCLA. 42 U.S.C.A. § 9607(a)(1). Furthermore, contrary to defendants' assertions, there need be no showing of causation of harm, merely ownership. *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985). Thus, plaintiff has properly alleged that defendants are covered parties under two theories.

■ The third element of a *prima facie* CERCLA claim requires that there be a release or threatened release of a hazardous substance at the facility. A "release" is "any

spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." 42 U.S.C.A. § 9601(22). "Environment" is defined as "any ... land surface or subsurface strata, or ambient air within the United States...." *Id.* § 9601(8)(B). Defendants contend that there has been no release "into the environment" because the release was only into the railroad tunnel which they contend is a structure itself.

■ Defendants also assert the related argument that CERCLA is limited in such a way that it does not cover any asbestos removal regardless of whether a release occurs solely within a structure. They base this assertion on CERCLA § 9604(a)(3)(B) which prohibits the President from taking remedial action in "response to a release or threat of release ... from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures...." Indeed, this language has been construed to also bar private parties from recovering remediation costs of removal of asbestos which was part of a building structure. However, this bar applies only to responses to releases or threatened releases wholly *within* the same building of which the hazardous substance was a part. *See, e.g., Blech,* 976 F.2d at 527.

Defendants argue that the undersides of the buildings and the support pillars are actually part of the tunnel structure. This argument is particularly strained since the buildings were constructed subsequently to the track. The undersides of the buildings are quite simply the surfaces of the defendants' structures which abut the tracks much as the wall of a building next to a vacant lot is merely the wall of that building rather than the wall of the vacant lot. Therefore, the release and threatened release of ACM is not within the exclusion for releases of building materials within the same building.

Furthermore, plaintiff alleges that the ACM flaked into the air of the tunnel which is open to the rest of the atmosphere at points along the track route where buildings have not been erected over the tracks. The ACM also fell onto the track bed which is a

## 1278

land surface. Therefore, plaintiff has alleged a release of hazardous substance into the environment.

■ Defendant further contends that this "release" is within a statutory exception to the definition of a "release." Excluded is any release "which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons...." 42 U.S.C.A. § 9601(22)(A). However, this clause only excludes from CERCLA liability claims by employees for injuries caused by releases of hazardous substances within a workplace which are covered by worker's compensation. *See* SEN.REP.NO. 848, 96th Cong., 2d Sess. 94 (July 13, 1980); *see also Covalt v. Carey Canada Inc.,* 860 F.2d 1434, 1439 (7th Cir.1988).

For reasons identical to those discussed above in the context of releases to the environment, the release in question was not solely within a workplace. Also, here, the "workplace" in question is not only a workplace since Amtrak passengers pass through the area and would have been exposed to the ACM had it remained in the area. Thus, the workplace exclusion is inapplicable.

Therefore, plaintiff has satisfactorily alleged the release element of a CERCLA claim.

Finally, the fourth and fifth elements of a CERCLA claim require that plaintiff assert a claim to recover the costs of response which are consistent with the National Contingency Plan (NCP). 42 U.S.C.A. § 9607(a)(4), (a)(4)(B). Plaintiff specifically alleges that it incurred costs to remove the ACM from its tracks and the building structure and that its removal was consistent with the NCP. This is sufficient to withstand a motion to dismiss for failure to state a claim.

■ The parties consistently refer to the standard for summary judgment and so it is necessary to briefly address that issue. Consistency with the NCP is a factual question. *Carlyle Piermont Corp. v. Federal Paper Bd. Co.,* 742 F.Supp. 814, 819 (S.D.N.Y.1990). Whether defendants arranged for disposal is also a factual question.

### B. *Nuisance*

■ "[O]ne is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart Indus., Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 970 (1977).

■ Common to the claims for intentional and negligent nuisance is the requirement that defendants' actions be the legal or proximate cause of plaintiff's injury. Defendants assert that plaintiff has not shown that defendants' acts or omissions were the legal cause of harm to plaintiff. Defendant Born further argues that it was not the cause of harm to plaintiff because the ACM could have been encapsulated rather than removed and so plaintiff is responsible for the decision to remove the ACM and the resulting costs it incurred. However, this misconstrues the nature of the harm relevant to a claim of nuisance. The harm is not the cost of abating the nuisance but rather the harm is the loss of use of the property. Plaintiff has alleged that defendants caused ACM to flake about the tracks thereby unreasonably interfering with its use of its property. Therefore, this element of a nuisance claim has been adequately alleged.

Plaintiff also alleges that the defendants intended or were negligent in causing the nuisance. Defendants assert that they had no knowledge of the friable condition of the ACM prior to notification by Amtrak.

■ Defendants cannot be held liable for the nuisance if they did not know of the condition. *Meyers v. Fifth Ave. Bldg. Assocs.,* 90 A.D.2d 824, 456 N.Y.S.2d 17 (1982). However, plaintiff does not claim that the defendants had any knowledge of the condition of the ACM prior to notification by plaintiff. Plaintiff asserts that it informed the defendants of the interference to its use of the tracks caused by the presence of ACM on the tracks and that the ACM was continuing to flake off the defendants' buildings.

Thus, Amtrak has claimed that the defendants knew that the invasion was resulting or was substantially certain to result from defendant's failure to remedy the situation. These are allegations of intent. *See Copart,* 394 N.Y.S.2d at 174, 362 N.E.2d at 972.

■■■■ Defendants also argue that plaintiff does not allege negligence by defendants. Plaintiff must plead that defendant breached a duty owed to plaintiff, proximately causing injury to plaintiff. *See Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 555 N.Y.S.2d 46, 47 (1990). Under New York law, a party is liable for failing to abate a nuisance upon learning of it and having a reasonable opportunity to abate it. *Shore Realty,* 759 F.2d at 1050. Plaintiff has sufficiently alleged these elements to withstand a motion for dismissal.

■■■■ Furthermore, defendants' assertions, that their failure to remove the ACM was reasonable in light of alternative measures which could have been taken and that they did not have a reasonable opportunity to abate the nuisance before Amtrak took steps to remove the ACM, raise questions of fact which preclude summary judgment.

## C. Nuisance based upon an ultrahazardous activity

■■■■ Plaintiff has alleged that defendants' failure to adequately maintain the ACM on the undersides of their buildings constituted an ultrahazardous activity.[1] Complaint ¶ 109. New York weighs many factors in determining if an activity should be considered ultrahazardous. Most useful for purposes of analyzing plaintiff's claim is whether the risk from the activity is able to be eliminated by the exercise of reasonable care. *Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 398 N.Y.S.2d 401, 404, 368 N.E.2d 24, 26 (1977) (citing RESTATEMENT OF TORTS, SECOND § 520). Implicit in plaintiff's allegation is the acknowledgment that had defendants exercised due care and adequately maintained the ACM in a non-friable condition, no nuisance would have occurred. Therefore, plaintiff's claim

for nuisance based upon an ultrahazardous activity is dismissed.

## D. Trespass

■■■■ Defendants assert that plaintiff has not alleged the requisite intent for trespass. As discussed above, intent may be found where a defendant intended the result or knew or should have known that the result was substantially certain to occur. Here the defendants were notified by Amtrak that the ACM was falling onto the tracks. Defendant Born further asserts that Amtrak does not allege that there was a continuing trespass after 1989 when the problem was discovered. In fact, Amtrak does allege the problem was continuing. Complaint ¶ 14. Having alleged a continuing trespass to its property, about which the defendants were on notice, plaintiff's claim for trespass should not be dismissed.

## E. Restitution and Indemnity

■■■■ Plaintiff has adequately alleged claims for restitution and indemnity under New York law.

"A person who, in whole or part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." ... "A person who has performed the duty of another, by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefore, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety."

*City of New York v. Keene Corp.,* 132 Misc.2d 745, 505 N.Y.S.2d 782, 784 (Sup.Ct.1986) (quoting RESTATEMENT OF LAW, RESTITUTION §§ 76, 115); *see also New York v. Schenectady Chem., Inc.,* 103 A.D.2d 33, 479 N.Y.S.2d 1010 (1984); *State v. Stewart's Ice Cream,* 64 N.Y.2d 83, 484 N.Y.S.2d 810,

---

**1.** Plaintiff does not contend that the installation of or use of ACM prior to being notified of its deteriorating condition in 1989 was an ultrahaz-

ardous activity. Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss at 59.

473 N.E.2d 1184 (1984). "[T]he breach of duty on defendants' part necessary to sustain a cause of action for indemnity may be found in any other viable cause of action." *Keene*, 505 N.Y.S.2d at 785.

Plaintiff has adequately identified the sources of the parties respective duties to abate the flaking of ACM as it must to state a claim for indemnity. Plaintiff has asserted it owes a duty to its employees and passengers to protect them from exposure to asbestos. Plaintiff's claims under CERCLA and for violation of the building code, if proved, would establish a duty on the part of defendants for purposes of plaintiff's indemnity claim. Therefore, plaintiff has adequately alleged a claim for indemnity.

█ With regard to plaintiff's claim for restitution, defendant argues that removal of the ACM was not immediately necessary since the operable time constraint was plaintiff's own work schedule. However, in light of allegations that the tracks are open to the sky at points along their route, it is reasonable to infer that the ACM could be blown off the tracks onto the city streets thereby exposing the public immediately to asbestos. Thus, bearing in mind that on a motion to dismiss this Court must accept the facts as alleged by plaintiff, plaintiff has adequately alleged a claim for restitution. Furthermore, the question of whether the removal was immediately necessary to protect the public is one fact which precludes summary judgment at this point.

Therefore, plaintiff's indemnity and restitution claims should not be dismissed.

#### F. Breach of Covenant

█ Defendant NYCHA, while moving to dismiss plaintiff's breach of covenant claim, presents no argument in support of dismissal. Defendant Born argues that the covenant merely imposes an obligation to not do anything to interfere with plaintiff's use of the easement. Born argues that since it has not done anything affirmative to interfere with Amtrak's use and that Amtrak's actions to remove the ACM prevented Born from taking any steps to remedy the situation, Born has not breached the covenant. Born is mistaken.

Covenants should be so interpreted as to give effect to the actual intention of the parties as disclosed by the entire instrument ... [but] a restrictive covenant must be construed strictly against the one who seeks to enforce it, and should never be extended beyond the fair import of the language employed, except by necessary implication.

*Johnson v. Colter,* 251 A.D. 697, 297 N.Y.S. 345, 347 (1937). Amtrak has alleged that Born is bound by covenants running with the land "never to do anything that would jeopardize or interfere with the free, safe and continuous operation of the railroad." Complaint ¶ 68. Thus, the complaint alleges the existence of a covenant which indicates the parties' intent to require Born to prevent anything from passing from its property onto plaintiff's easement so as to interfere with Amtrak's use of it. The covenant may be construed to require Born to prevent its use of its property from interfering with plaintiff's use of its easement.

Therefore, plaintiff has adequately alleged a claim for breach of covenant.

#### G. Violation of the Building Code

█ Violations of the building code may give rise to a private cause of action. *See Guzman v. Haven Plaza Hous. Dev. Fund Co.,* 69 N.Y.2d 559, 516 N.Y.S.2d 451, 509 N.E.2d 51 (1987). Therefore, plaintiff's allegations of tort liability due to defendants' violations of the building code state a claim upon which relief can be granted.

Defendant NYCHA asserts that plaintiff was responsible for maintenance of the ACM located on the building surfaces on the NYCHA site and therefore cannot assert a claim against NYCHA. This raises a question of fact which precludes summary judgment.

### II. DEFENDANT BORN'S THIRD–PARTY CLAIMS

#### A. CERCLA

█ CERCLA allows a party that is found liable for response costs to seek contribution from other responsible parties. 42 U.S.C.A. § 9613(f)(1). Born alleges that the

Motel Defendants and Travelodge disposed of ACM during the years they each owned the property and operated the motel, respectively. Born also alleges that asbestos flaked onto the tracks while the ACM was being installed by the Motel Defendants. In addition to liability for disposal, Born alleges liability based upon ownership and operation of a facility. Therefore, Born's claim against the Motel Defendants and Travelodge, based upon allegations of their having allowed the ACM to flake onto the tracks, should not be dismissed.

■ Third-party defendant Travelodge raises two statutory defenses to the CERCLA claim against it: the innocent landowner defense, 42 U.S.C.A. §§ 9607(b)(3), 9601(35), and the third-party defense, *id.* § 9607(b)(3). While these defenses may be available to Travelodge, they do not serve to warrant dismissal of the claim against it on this motion since the facts as alleged by the non-movant must be taken as true. Thus, whether Travelodge can prove it had no knowledge of the ACM on the premises during the years it leased the site, thereby proving an element of the innocent landowner defense, is a disputed question of fact. The factual questions of whether the release or disposal of ACM was caused by acts of parties other than Travelodge and whether Travelodge exercised due care with respect to the ACM preclude summary judgment on the third-party defense as well.

Therefore, Born's third-party CERCLA claim should not be dismissed.

#### B. *Contribution and indemnity for the state law claims*

■ Principles of contribution and indemnity, which are not mutually exclusive, serve to allocate the responsibility among defendants according to the relative measure of their wrongdoing. *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 555 N.Y.S.2d 669, 674–75, 554 N.E.2d 1257, 1262–63 (1990). Thus, a party may recover from another for liability imposed by imputation of law or where the liability imposed is disproportionate to actual wrongdoing.

Born has alleged that, if the claims against it are not dismissed, the third-party defendants owed a duty to plaintiff and that the failure to satisfy this duty resulted in plaintiff's damages. Specifically, Born has alleged: that third-party defendants are liable for contribution because they intentionally or negligently created a nuisance causing damage to Amtrak; that the third-party defendants are liable for nuisance based on an ultrahazardous activity and trespass to Amtrak's property; and that the benefits of Amtrak's ACM removal accrue to the third-party defendants because Born removed a potential source of liability for them and thus they are liable for restitution to Amtrak.

Plaintiff's claim against Born for nuisance based upon an ultrahazardous activity having been dismissed, Born's third-party claim for contribution for this claim is also dismissed as moot. The remainder of Born's third-party claims are not dismissed.

### III. TRAVELODGE'S THIRD–PARTY COUNTER CLAIM.

In its Verified Amended Answer to Third Party Complaint, third-party defendant Travelodge asserts a counter claim against defendant NYCHA. However, Travelodge does not allege any basis for any claim against NYCHA. Nor can one be discerned since NYCHA owns a site separate and distinct from the Born site where Travelodge once leased a motel. Therefore, Travelodge's third-party claim against NYCHA is dismissed.

#### *Conclusion*

Defendants' motions to dismiss are granted in part. Plaintiff's fourth claim for nuisance based upon an ultrahazardous activity is dismissed.

Third-party defendants' motions to dismiss are granted in part. Third-party plaintiff Born's claims for contribution or indemnity from third-party defendants for plaintiff's claim based on an ultrahazardous activity is dismissed as moot.

Defendant NYCHA's motion to dismiss third-party defendant Travelodge's counter claim against NYCHA is granted.

The balance of both the defendants' and the third-party defendants' motions to dismiss are denied.

SO ORDERED.