Lippman, J.
(dissenting and voting to affirm the judgment). The judgment of the trial court awarding plaintiff the principal sum of $2,100 in damages based on plaintiffs nuisance claim *77 and dismissing defendant’s counterclaim for harassment should be affirmed.
This is a small claims action arising from the invasion of roots from defendant’s tree (caliber of 66 inches) onto plaintiff s property located in Oceanside, New York, which is causing damage to the rear wall of plaintiffs garage. The tree is located six to eight inches from the common boundary line. Defendant has lived in the house since 1964, and the tree has been there since he moved in. From the evidence adduced at trial, it is undisputed that the tree predates plaintiffs garage and that the garage was built approximately one foot from the property line. At trial, plaintiff testified that the garage was built at the same time his house was built.
The roots of the tree over time have invaded the garage wall causing a large crack (IV2 to 2 inches in width) to occur down the rear wall. It is undisputed that plaintiff had previously notified defendant of the damage occurring to his garage and that he and other neighbors had approached defendant in writing in September 2003, and two subsequent times in October 2003, to request permission to take down the tree at no cost to defendant. Defendant testified that he declined plaintiffs offer to cut down the tree because he was opposed to cutting down trees, and because it is his view that too many of his neighbors have cut down their trees.
At the close of trial, defendant requested that the court dismiss the action and argued, based on various cases he had provided to the court, that it is the responsibility of the adjoining property owner to trim back branches that extend over the property line, and that to the extent any damage occurs because of the branches extending over the property line, it is the adjoining property owner who is responsible for that damage since the tree and its growth are acts of nature. While defendant did not articulate his reason for relying on negligence cases involving tree branches causing damage to an adjoining property, it would appear that defendant was requesting that the court extend the rule found in those cases to cases involving tree roots.
The trial court found that plaintiff had sustained his burden of proof on his claim sounding in nuisance and awarded plaintiff $2,100 in damages (i.e., the cost to repair the wall). The court reviewed the law on nuisance and found that the cases
“set forth that a plaintiff must resort to ‘self help’ in the first instance that is, cutting back the offend *78 ing overhanging branches or encroaching tree roots before instituting a law suit against the owner of the tree. However, the vast majority of these cases apply to problems with overhanging branches, not tree roots” (Iny v Collom sub nom. Iny v Collum, 4 Misc 3d 1009[A], 2004 NY Slip Op 50795[U], *1 [2004]).
In this regard, the court found that
“In reviewing the photographs entered into evidence and listening to the testimony of the parties to this law suit, it is apparent that plaintiffs garage is only one foot from his rear property line and that area has been utilized by the defendant. It would be almost impossible for plaintiff to remain on his property and cut out the offending roots, if they were visible to him” (id. at *2).
Thus, the trial court specifically found that resort to self-help was impracticable in this case.
The issue faced in this appeal is whether, under New York law, a property owner whose property is being encroached upon and damaged by the roots of a neighboring property owner’s tree may successfully assert a cause of action sounding in private nuisance if the property owner’s resort to self-help is impracticable, and the property owner’s attempts at obtaining assistance from the neighboring property owner to abate the roots’ encroachment have been unsuccessful. Based upon the facts presented in the instant appeal, this court should have answered that question in the affirmative.
As explained by the New York Court of Appeals,
“Nuisance is based upon the maxim that ‘a man shall not use his property so as to harm another’. ... It traditionally required that, after a balancing of risk-utility considerations, the gravity of the harm to a plaintiff be found to outweigh the social usefulness of a defendant’s activity” (Little Joseph Realty v Town of Babylon, 41 NY2d 738, 744-745 [1977] [citations omitted]).
The Court of Appeals has further differentiated between a private and public nuisance by stating that “[a] private nuisance threatens one person or a relatively few ... an essential feature being an interference with the use or enjoyment of land” (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977], rearg denied 42 NY2d 1102 [1977]). The interference with the use or enjoyment of land must amount to an injury in relation to a right of ownership in that land (Kavanagh v Barber, 131 NY 211, 213-214 [1892]).
*79 To establish a cause of action for private nuisance, the plaintiff must show that the defendant’s conduct causes substantial interference with the use and enjoyment of plaintiff s land and that defendant’s conduct is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the laws governing liability for abnormally dangerous conditions or activities (Copart Indus., 41 NY2d at 569). The interference can be caused by an individual’s actions or failure to act (id. at 571). Thus, it has been held that when a defendant has been put on notice that his activity is interfering with plaintiff’s use and enjoyment of his land and defendant fails to remedy the situation, the defendant will be found to have acted intentionally and unreasonably (see e.g. National R.R. Passenger Corp. v New York City Hous. Auth., 819 F Supp 1271, 1278-1279 [1993]). Furthermore, “[u]nder New York law, a party is liable for failing to abate a nuisance [under a theory of negligence] upon learning of it and having a reasonable opportunity to abate it” (National R.R. Passenger Corp., 819 F Supp at 1279, citing State of New York v Shore Realty Corp., 759 F2d 1032, 1050 [1985]).[1]
The question of whether there has been a substantial interference with plaintiff’s use and enjoyment of his/her property is one to be resolved by the trier of fact and involves a review of the totality of the circumstances based upon a balancing of the rights of the defendant to use his or her property against the rights of the plaintiff to enjoy his or her property (see e.g. Turner v Coppola, 102 Misc 2d 1043, 1047 [1980], affd 78 AD2d 781 [1980]; Walker v Wearb, 6 NYS2d 548, 552-553 [1938]). The balancing amounts to a risk-utility analysis weighing the social value of the conduct involved against the harm to private interests (Little Joseph Realty, 41 NY2d at 744; Kreindler et al., New York Law of Torts § 4:4 [14 West’s NY Prac Series]).
While the elements of a nuisance action appear straightforward, in New York there is a paucity of case law addressing nuisances arising from trees or other plant life. Nevertheless, there is substantial case law from jurisdictions outside New *80 York which have taken well-defined approaches to the issue of liability based on nuisance (or trespass or negligence) for encroachments arising from trees or other plant life. In other jurisdictions, there appear to be four different approaches concerning whether claims based on encroaching branches/roots are properly sustainable based on the laws of nuisance, trespass or negligence.[2] The Massachusetts rule provides that in cases involving trees not noxious or poisonous in nature, an action" at law or in equity for nuisance or trespass will not lie, and that the sole remedy available to an adjoining property owner is that of self-help (see Michalson v Nutting, 275 Mass 232, 175 NE 490 [1931]).[3] This rule derives from the concern that allowing a cause of action any time a tree or plant encroaches upon another’s land would generate innumerable and vexatious lawsuits. However, it has been criticized as arcane in approach and better suited to former times when the landscape was rural in character (see e.g. Lane v W.J. Curry & Sons, 92 SW3d 355, 361 [Tenn 2002]). Other jurisdictions have adopted the rule set forth in the Restatement (Second) of Torts, which “imposes an obligation upon a landowner . . . when the [encroaching] vegetation is ‘artificial’ (i.e., planted or maintained by a person), but not when the encroaching vegetation is ‘natural.’ See Restatement (Second) of Torts §§ 839, 840 (1979)” (Lane, 92 SW3d at *81 361).[4] Courts declining to use this approach have criticized it because of the difficulty in determining which trees are the result of natural growth (i.e., not planted by people) and/or which trees are not in any way influenced by human activity in the form of fertilizing, trimming, or other cultivation (see e.g. Sterling v Weinstein, 75 A2d 144, 147, supra; Harvey v Hansen, 299 Pa Super 474, 445 A2d 1228, 1231 [1982]).
Several jurisdictions have adopted the Virginia approach, “which provides that the injured landowner is limited to self-help unless the encroaching tree or plant is ‘noxious’ and causes actual harm to the neighboring property” (Lane, 92 SW3d at 362, citing Smith v Holt, 174 Va 213, 5 SE2d 492 [1939]; Cannon v Dunn, 145 Ariz 115, 700 P2d 502 [1985]). It also appears that the plaintiff must have given notice of the injury to the adjoining property owner prior to having an action at law or in equity (see Smith, 174 Va at 218, 5 SE2d at 495). Few states have followed this rule because of the difficulty in determining what is a noxious tree or plant — does it merely mean that it does injury or must it be inherently injurious or poisonous? (See Lane, 92 SW3d at 362.)
A fourth approach adopted by the court in Whitesell v Houlton (2 Haw App 365, 632 P2d 1077 [1981]) is referred to as the Hawaii rule or the modified Virginia rule.[5] Courts adopting this rule hold that a landowner may always, at his own expense, cut away only to his property line above or below the surface of the ground any part of the adjoining owner’s trees or other plant life. However, in addition to the remedy of self-help, a cause of action for nuisance will be sustained providing the following conditions are satisfied:
“[N]on-noxious plants ordinarily are not nuisances; that overhanging branches which merely cause shade or drop leaves, flowers, or fruit are not *82 nuisances; that roots which interfere only with other plant life are not nuisances; that overhanging branches or protruding roots constitute a nuisance only when they actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit; that when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for the damages and to cut back the endangering branches or roots and, if such is not done within a reasonable time, the damaged or imminently endangered neighbor may cause the cutback to be done at the tree owner’s expense” ("Whitesell, 2 Haw App at 367-368, 632 P2d at 1079).
While the case law in New York in this area of nuisance jurisprudence does not fit neatly into any of these four aforementioned rules, some common themes are nonetheless apparent. To begin with, New York courts have found that to the extent overhanging branches or underground roots are determined to constitute a nuisance, self-help is not the only remedy available, and an action at law or in equity may be brought for damages and to abate such a nuisance (see e.g. Hoffman v Armstrong, 46 Barb 337 [1866], affd 48 NY 201 [1872]). However, in order to sustain a cause of action for nuisance with regard to trees not noxious, poisonous, decayed, or dangerously unsound, a plaintiff must establish that the overhanging branches or encroaching roots are causing “sensible damage” — i.e., damage not simply nominal in form but rather damage “a sensible person if subjected to . . . would find injurious” (Countryman v Lighthill, 24 Hun 405, 406-407 [1881] [berry bushes suffering from shade caused by overhanging branches did not satisfy sensible damage requirement]; see also Turner v Coppola, 102 Misc 2d 1043 [1980], affd 78 AD2d 781 [1980], supra). Otherwise, plaintiffs remedy is limited to self-help (i.e., cutting the offending branches or tree roots to the extent that they encroach on plaintiffs property).
At least one court has held that a complaint sufficiently alleges a nuisance claim where (1) the roots of defendant’s trees were causing upheaval to patio blocks around plaintiffs pool as *83 well as cracks in her pool, (2) plaintiff had already unsuccessfully resorted to self-help (by digging trenches on her property) to no avail, and (3) defendants had failed to respond to plaintiffs requests for help (see Ferrara v Metz, 49 Misc 2d 531 [1966]).
In Norwood v City of New York (95 Misc 2d 55 [1978]), the trier of fact actually reached the issue of nuisance liability. In that case, a municipality was found liable based on its planting of an oak tree on the curb line of plaintiffs property directly over plaintiffs sewer line. In its balancing of the interests involved, the court found that the municipality should bear the cost of repairing the sewer lines since it was foreseeable that future damage would occur given that oak trees have deep roots with a propensity to enter the joints of sewer pipes. Norwood reiterated the rule that a property owner is not limited to self-help if nuisance liability is established; indeed, the court held that resort to self-help is not necessarily always a prerequisite:
“It is the determination of the court that it would not be realistic to limit a landowner to a right to dig for and cut roots. While such a limitation upon the rights of a landowner may be proper with respect to overhanging branches of a tree . . . such a limitation would be manifestly unfair to a landowner whose property may be directly injured by the effect of spreading roots. Unlike branches which are readily visible and which may often be cut without great difficulty, roots are not generally visible and may require considerable digging in order to remove them. Indeed, the landowner will usually not know that he has reason to cut roots until damage has occurred” (Norwood, 95 Misc 2d at 58).[6]
While the court in Norwood specifically found resort to self-help in the first instance was not a necessary requirement to sustain the nuisance claim based on the facts presented in that case, other cases have found plaintiffs failure to resort to self-help a bar to a nuisance action. For example, Loggia v Grobe (128 Misc 2d 973 [1985]) was an action involving encroaching tree roots that were causing substantial damage to a patio. The court distinguished the holding in Norwood because the plaintiff *84 in Loggia had failed to present expert testimony concerning the root and tree propensity and, therefore, self-help was more reasonable and realistic. Furthermore, in Loggia, defendant had given plaintiff permission to enter the property and remove the tree. Thus, the court dismissed plaintiff’s nuisance claim because, while plaintiff had established sensible damage, the facts in that case required that plaintiff first resort to self-help (Loggia v Grobe, 128 Misc 2d 973 [1985], supra; see also Colombe v City of Niagara Falls, 162 Misc at 596 [court holds municipality not liable for damage occurring to improperly constructed sewer from invasion of roots of tree planted by municipality since plaintiff had remedy to “cut off roots on his own land that would clog up his sewer if the city refused to do it”]).
The importance of sensible injury (substantial damage to property other than plant life) was confirmed in Turner v Coppola (102 Misc 2d 1043 [1980], affd 78 AD2d 781 [1980], supra). In that case, since the only injury involved debris and cosmetic damage to plaintiffs garage based on the lack of sunlight, the court held that plaintiffs alleged damages were not substantial enough to seriously interfere with the use and enjoyment of her property. The court found:
“Clashing land uses require an examination of the character of the neighborhood as well as the character of the defendants’ and plaintiffs alleged harms and equities within a balancing framework. Using such a framework, upon these facts, this court is not persuaded that plaintiff has suffered unreasonable injury or that she carries an unreasonable burden by continued exercise of her right to cut off the offending, overhanging branches and bag or rake the offending leaves” (Turner, 102 Misc 2d at 1047).
The court nevertheless left an opening for plaintiff to institute a future nuisance action by stating that “[i]f a valid nuisance does arise in the future, however, plaintiff would not be barred from complaining about it merely because the nuisance was there first” (id.).
Based on the foregoing, it would appear that the courts in New York have, in large measure, adopted a hybrid approach somewhere between the Hawaii and Virginia rules in determining the issue of nuisance liability. To sustain a cause of action for nuisance, a plaintiff must resort to self-help in the first instance, which does not appear to be a prerequisite under the *85 Hawaii rule. Once plaintiff establishes that self-help failed or self-help was impracticable, plaintiff must next establish that he/she has sustained sensible damage (an injury to something other than plant life), that defendant’s conduct is causing substantial interference with the use and enjoyment of plaintiffs land, that defendant’s conduct is intentional or negligent, and that the continued interference with the use and enjoyment of plaintiff’s property is unreasonable. Where a defendant has been notified that a tree was causing damage to plaintiffs property and defendant refuses to assist plaintiff in taking measures designed to abate the nuisance, the defendant can be found to have acted intentionally or negligently with regard to the nuisance. The unreasonableness of the interference will depend upon an overall balancing of the equities: the injuries to plaintiff and to defendant, the character of the neighborhood, the ongoing nature of the injury, and the nature of defendant’s actions.
In this case, the trial court properly found that plaintiff had satisfied all the essential elements for a nuisance cause of action. As an initial matter, the fact that the tree was in existence before the construction of the garage does not affect the viability of plaintiffs nuisance action (see Turner, 102 Misc 2d at 1047; see also Campbell v Seaman, 63 NY 568 [1876]). The requirement that plaintiff first resort to self-help was satisfied based on the trial court’s finding that self-help was impracticable under the circumstances (see Ferrara, 49 Misc 2d at 531; see also Holmberg, 285 Minn at 258, 172 NW2d at 744). The large crack (IV2-2 inches wide) in the garage wall and the possible instability of the garage wall satisfied the “sensible damage” requirement to property other than plant life (see Countryman, 24 Hun at 407; Turner, 102 Misc 2d at 1045). The intentional nature of defendant’s actions was established by plaintiffs notification to defendant that the roots were damaging plaintiff’s garage wall, and by defendant’s denial of plaintiffs request to remove the tree at plaintiffs expense, or to otherwise abate the nuisance (see National R.R. Passenger Corp., 819 F Supp at 1278-1279).[7] Finally, the court properly weighed the character of the neighborhood, the nature of the defendant’s and plaintiffs alleged harms and the equities involved in rendering its determination that defendant’s tree was causing a substantial interference with plaintiffs use and enjoyment of his property (Turner, 102 Misc 2d at 1047).
*86 Inasmuch as the trial court properly found defendant liable in nuisance, the next question is whether the relief afforded by the trial court was proper. It is well established that in actions involving nuisance, the extent of relief granted rests largely within the discretion of the trial court (Boomer v Atlantic Cement Co., 26 NY2d 219 [1970]; Hadcock v City of Gloversville, 96 App Div 130 [1904]). Here, the trial court decided that the appropriate remedy was an award of damages in the amount necessary to repair the garage wall. The trial court did not abuse its discretion in awarding damages. Furthermore, a review of the record indicates that substantial justice was done between the parties in accordance with the rules and principles of substantive law (UDCA 1804, 1807).
While New York’s law of nuisance concerning encroachments from trees and other plants is less than fully developed, I believe that the facts of this case support the trial court’s finding of liability against defendant based on nuisance. Requiring defendant to pay for the damage sustained to plaintiffs garage, in light of defendant’s refusal to take any action to abate the nuisance, strikes the appropriate balance between the competing interests of these adjoining property owners.
For all the foregoing reasons, the judgment should be affirmed.
Rudolph, EJ., and McCabe, J., concur; Lippman, J., dissents in a separate memorandum.

. It is axiomatic that a defendant “cannot be held liable for the nuisance if [he] did not know of the condition” (National R.R. Passenger Corp., 819 F Supp at 1278). However, a court will find that the complaint sufficiently alleges defendant’s intentional conduct where plaintiff alleges that he/she informed defendant of the condition caused by the nuisance and that the “invasion was resulting or was substantially certain to result from defendant’s failure to remedy the situation” (id. at 1279).

. Some courts utilize their respective state’s nuisance statutes in analyzing the viability of such nuisance actions (see e.g. Scott v Ramos, 399 So 2d 1266 [La 1981], writ denied 404 So 2d 279 [La 1981]; Holmberg v Bergin, 285 Minn 250, 172 NW2d 739 [1969]; Lemon v Curington, 78 Idaho 522, 306 P2d 1091 [1957]; Mead v Vincent, 199 Okla 508, 187 P2d 994 [1947]; Stevens v Moon, 54 Cal App 737, 202 P 961 [1921]; Gostina v Ryland, 116 Wash 228, 199 P 298 [1921]). New York also has a statute governing nuisance claims, but plaintiff did not avail himself of this option (see RPAPL 841). Other states, such as New Jersey and Pennsylvania, have recognized the viability of actions for nuisance or trespass based on encroachments from roots or branches, but their holdings do not fall within any of these four approaches (see e.g. D’Andrea v Guglietta, 208 NJ Super 31, 504 A2d 1196 [1986]; Jones v Wagner, 425 Pa Super 102, 624 A2d 166 [1993], lv denied 536 Pa 626, 637 A2d 286 [1993]).

. The state courts that have adopted the Massachusetts rule are the District of Columbia, Florida, Kentucky, Maryland, Missouri, North Dakota, Texas and Utah (see Sterling v Weinstein, 75 A2d 144 [DC 1950]; Richmond v General Eng’g Enters. Co., 454 So 2d 16 [Fla 1984]; Schwalbach v Forest Lawn Mem. Park, 687 SW2d 551 [Ky 1985]; Melnick v C.S.X. Corp., 312 Md 511, 540 A2d 1133 [1988]; Hasapopoulos v Murphy, 689 SW2d 118 [Mo 1985]; Langer v Goode, 21 ND 462, 131 NW 258 [1911]; Gulf, C. & S.F. Ry. Co. v Oakes, 94 Tex 155, 58 SW 999 [1900]; Cannon v Neuberger, 1 Utah 2d 396, 268 P2d 425 [1954]).

. The states adopting the Restatement rule are Michigan, Minnesota, Mississippi and Wisconsin (see Ken Cowden Chevrolet, Inc. v Corts, 112 Mich App 570, 316 NW2d 259 [1982]; Holmberg v Bergin, 285 Minn 250, 172 NW2d 739 [1969], supra; Griefield v Gibraltar Fire & Mar. Ins. Co., 199 Miss 175, 24 So 2d 356 [1946]; Wells v Chicago & N. W. Transp. Co., 98 Wis 2d 328, 296 NW2d 559 [1980]).

. The jurisdictions following the Hawaii rule include Illinois, Indiana, Kansas, New Mexico, Ohio and Tennessee (see Chandler v Larson, 148 Ill App 3d 1032, 500 NE2d 584 [1986]; Toledo, St. L. & K.C.R. Co. v Loop, 139 Ind 542, 39 NE 306 [1894]; Pierce v Casady, 11 Kan App 2d 23, 711 P2d 766 [1985]; Abbinett v Fox, 103 NM 80, 703 P2d 177 [1985], cert quashed 103 NM 62, 702 P2d 1007 [1985]; Rautsaw v Clark, 22 Ohio App 3d 20, 488 NE2d 243 [1985]; Lane v W.J. Curry & Sons, 92 SW3d 355, supra).

. In Norwood, the court found that the sewer had been properly constructed. It would appear that this fact was central to the decision since similar earlier decisions had found no liability on behalf of a municipality where the sewer was found to have been improperly constructed (see Morrison v City of New Rochelle, 155 NYS2d 937 [1956]; Colombe v City of Niagara Falls, 162 Misc 594 [1937]).

. See also Abbinett, 103 NM at 85, 703 P2d at 182; Chandler, 148 Ill App 3d at 1038, 500 NE2d at 588; cf. Smith, 174 Va at 219, 5 SE2d at 495.