*344 OPINION OF THE COURT
Howard A. Zeller, J.
Defendant Lee Knowles, Inc., moves to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 2) upon the ground the court lacks subject matter jurisdiction, and in the alternative to dismiss pursuant to CPLR 3211 (subd [a], par 3) and 1003 upon the grounds the State lacks the legal capacity to bring this action, or in the alternative, is not a proper party plaintiff; in the alternative, to dismiss pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action; in the alternative to dismiss pursuant to CPLR 3211 (subd [a], par 10) due to the absence of persons or corporations who should be named defendants; in the alternative for an order pursuant to CPLR 3024 for a more specific statement regarding the alleged knowledge of Lee Knowles, Inc., of the chemicals which were to be handled by defendant Monarch Chemicals, Inc.
This action concerns the alleged pollution of a municipal water supply by the improper storage and handling of hazardous chemicals. Plaintiffs State of New York, Town of Vestal, and Vestal Water District Nos. 3, 4, and 6 allege: defendant Monarch Chemicals, Inc., leases a site in the Town of Vestal from defendant Lee Knowles, Inc. (Knowles); defendants Monarch, Jones Chemicals, Inc., and Caledonia Lines, Inc., use this site for the storage and handling of chemicals; the soil under this site is permeable and saturated with groundwater which is part of the aquifer for Vestal and its water districts; well No. 4-2 is several hundred feet away; the danger of spilled and leaked chemicals seeping into the water supply makes this an inappropriate site for these activities; some of Monarch’s chemicals, including trichloroethylene, tretrachloroethylene, and 1, 1, 1-trichloroethane, have been found in the Vestal water supply. Plaintiffs further allege Monarch, Jones and Caledonia have overfilled barrels, failed to collect spillage, and accelerated migration of the spillage by hosing down the area; reddish runoff and soapy or foamy runoff have been observed leading away from the site; drums have been upended, killing vegetation located downhill; on one occasion a hose connection caused substantial leakage; barrels and drums are stored uncovered and unprotected *345 from the weather; after barrels are cleaned the wastewater is allowed to spill onto the ground; Monarch has failed to heed a request by the Department of Environmental Conservation (DEC) to remedy these practices; Jones and Caledonia have participated in and permitted these practices; Knowles as landlord knew or should have known of the dangers posed by the storage of chemicals on the site, and knew or should have known of Monarch’s improper practices, but failed to take adequate steps to correct them.
The first cause of action is on behalf of the State and alleges defendants are strictly liable for the maintenance of a public nuisance; the second cause of action by the State alleges the negligent maintenance of a public nuisance; the third cause of action for public nuisance alleges a negligent failure to prevent migration of chemicals; the fourth cause of action for public nuisance alleges an intentional continuation of the improper practices; the fifth cause of action for public nuisance alleges an intentional failure to prevent migration of the chemicals; the sixth cause of action seeks restitution for tests performed by the State to determine the source of the pollution. The first cause of action on behalf of the Town of Vestal and water districts Nos. 3,4 and 6 seeks to enjoin defendants from continuing their contamination. It alleges as a result of defendants’ acts the town incurred expenses of $150,000 for carbon filtration and other temporary measures regarding well 4-2; this well, formerly with a capacity of 2.5 million gallons/day, has been abandoned and replaced with a well of a 1.4 million gallons/day capacity; development costs of a new well are $250,000, and the sum of $500,000 represents the amount to replace the capacity of well 4-2 and its diminished value; treatment facilities for other wells will cost $500,000, and $50,000 must be expended each year for 20 years to maintain these facilities; the second cause of action seeks treble damages for defendants’ willful acts pursuant to RPAPL 853; the third cause of action seeks punitive damages of $2,000,000 for defendants’ willful, wanton and malicious refusal to remedy their pollution.
The State, seeks judgment enjoining defendants from the continuation of a nuisance; directing Monarch, Jones and Caledonia to pay $100,000; that the court retain jurisdic *346 tion over this matter until the nuisance is abated; and interest, attorneys’ fees, and costs and disbursements. The town and water district seek $2,150,000 in damages; treble damages pursuant to RPAPL 853; an injunction; punitive damages of $2,000,000; and that the court retain jurisdiction until the abatement of the nuisance.
Lee Knowles avers that he leased the site in question consisting of a vacant lot and warehouse to Monarch from December 1, 1972 to November 30, 1982; Monarch has since installed several large storage tanks, and Mr. Knowles was informed these tanks stored liquids belonging to IBM; Mr. Knowles has no positive knowledge as to what was stored in these tanks, which were removed when this action was commenced; several other tanks on the opposite side of the premises were constructed and are still standing which he is informed are used for liquids; at no time prior to the making of the lease did he know that Monarch would be handling or storing toxic chemicals on the site.
Lee Knowles, Inc., first argues that regulation of this subject area has been pre-empted by Federal law and therefore this court lacks jurisdiction. Federal statutes will pre-empt State control over an area only if those statutes show a clear intent to do so (Ray v Atlantic Richfield Co., 435 US 151, 157). Several Federal laws affect this area. The Safe Drinking Water Act (US Code, tit 42, § 300f et seq.), inter alia, establishes national standards for the quality of drinking water, but primary regulation of drinking water in general is for the States (US Code, tit 42, § 300g-2). The Toxic Substances Control Act (US Code, tit 15, § 2601 et seq.) regulates the manufacture, sale and handling of toxic substances, and likewise expressly provides that State powers in this area remain unchanged (US Code, tit 15, § 2617). The Resource Conservation and "Recovery Act of 1976 (codified in part in US Code, tit 42, § 6901 et seq.) shows no intent to pre-empt interstate waste management or transportation (City of Philadelphia v New Jersey, 437 US 617, 620, n 4). City of Milwaukee v Illinois & Michigan (451 US 304, 310, n 4) is not relevant here because the issue before that court was “simply whether federal legislation [the Federal Water Pollution Control *347 Act] has supplanted federal common law”. Lee Knowles, Inc., has pointed to no Federal intent or direction that the States are barred from regulating drinking water or toxic chemicals, and this argument lacks merit.
The movant next argues that there is no indication that the Commissioner of DEC asked the Attorney-General to initiate enforcement proceedings pursuant to ECL article 17 or that the investigation provisions of ECL 17-0901 et seq. were followed. The Attorney-General responds that this is not an enforcement proceeding under the ECL, but rather an action to abate a public nuisance. The causes of action brought by the State all allege a public nuisance, are described as such in the headings, and are within the traditional power of the Attorney-General to relieve an offense against the community (see People v Rubenfeld, 254 NY 245, 247 [Cardozo, J.]; State of New York v Waterloo Stock Car Raceway, 96 Misc 2d 350).
Lee Knowles, Inc., next withdraws for purposes of this motion its contention that necessary parties defendant have not been joined.
Knowles argues the complaint as a whole fails to state a cause of action against it. Plaintiffs do not allege Knowles committed any pollution itself, but that Knowles as a landlord should have prevented Monarch’s pollution. As owner of the property Lee Knowles, Inc., has a duty to use reasonable care, to main the property in a safe condition in view of all the circumstances (Basso v Miller, 40 NY2d 233, 241). The lease to Monarch does not extinguish that duty, but is part of the circumstances that will affect its scope.
The first aspect of Knowles’ duty is whether it made a reasonable choice in leasing the area to Monarch for chemical storage and handling. A “landlord must exercise sufficient care in the selection of his tenant. If he knowingly lets the premises for a purpose which may give rise to liability, he will not be heard to complain, even though he has done no unlawful act” (People v Scott, 26 NY2d 286, 289). This obligation is reflected in subdivision 1 of section 837 of Restatement 2d of Torts which provides in part that a “lessor of land is subject to liability for a nuisance caused *348 by an activity carried on upon the land while the lease continues * * * if * * * (a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and (b) he then knows or should know that it will necessarily involve or is already causing the nuisance.”
The second aspect of Knowles’ duty is whether it acted reasonably once Monarch took possession of the site. What is reasonable will depend largely upon the extent of control and possession which the landlord retains over the premises (see People v Scott, supra, p 290). This control can be shown by the existence of a duty to repair, the right to reenter, and the landlord’s over-all involvement in the tenancy (see Putnam v Stout, 38 NY2d 607).
Knowles does not discuss the failure of any particular cause of action to state a cause of action. Instead, Knowles argues generally that it lacked knowledge that toxic chemicals would be stored or that the site was unsuitable, and that it lacked any real control or possession of the premises. The complaint clearly alleges Knowles had such knowledge and control and thereby breached its duty of reasonable care. The complaint does state causes of action. Whether plaintiffs eventually can prove one or more causes of action is not now before the court.
Knowles also moves pursuant to CPLR 3024 for an order directing plaintiffs to be more specific in their allegation of Knowles’ knowledge of the chemicals. A party may move for a more definite statement if “a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a response” (CPLR 3024, subd [a]). The complaint is not so vague or ambiguous that defendant Lee Knowles, Inc., cannot reasonably frame an answer.
The motion of defendant Lee Knowles, Inc., to dismiss the complaint and for a more definite statement is denied.
No motion costs are awarded.