STATE OF NEW YORK, Respondent-Appellant, v SCHENEC-
TADY CHEMICALS, INC., Appellant-Respondent.

Third Department, July 26, 1984

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Patricia Martinelli, Peter H. Schiff, James A. Sevinsky* and *Kathleen Liston Morrison* of counsel), for respondent-appellant.

*Higgins, Roberts, Beyerl, Coan, Willig, Erceg, Kramer & Lorenson, P.C. (William P. Willig* of counsel), for appellant-respondent.

OPINION OF THE COURT

WEISS, J.

This action was initiated by the State to abate a nuisance allegedly occasioned by the contamination of a presently inactive waste disposal site, owned by one Dewey Loeffel, on Mead Road in the Town of Nassau in Rensselaer County (hereinafter the Loeffel site). From the 1950's through the mid 1960's defendant, a manufacturer of various chemical products, contracted with Loeffel for disposal of a variety of chemical waste by-products (see *State of New York v Schenectady Chems.*, 117 Misc 2d 960, 961). Loeffel allegedly disposed of these wastes by simply pouring them into the surface water, or on the ground, or by dumping or burying containers made of steel, fiber or other degradable components. Essentially, it is charged that these pollutants have migrated through the soil and contaminated and/or pose a continued threat of contamination of the underlying ground waters which are utilized as a source of water by neighboring communities. During the relevant period, Loeffel disposed of wastes at this site generated by defendant and at least two others, General Electric Corporation and the Bendix Corporation. While these wastes are inextricably mixed, the State approximates that some 8,250 tons, or 17.8% of the total wastes deposited, are attributable to defendant. Both General Electric and Bendix have signed consent orders requiring their participation in a remedial plan, pursuant to which each generator will bear its proportionate share of cleaning up the site.

Defendant's refusal to participate in this plan has given rise to the instant lawsuit.

The amended complaint sets forth eight specific causes of action, including three statutory causes of action for violation of the Environmental Conservation Law, four causes of action sounding in public nuisance and a cause of action for restitution of expenses incurred in the investigation of the subject site. Responding to defendant's CPLR 3211 motion to dismiss the complaint, Special Term, in a comprehensive opinion (117 Misc 2d 960, *supra*), dismissed the restitution and statutory causes of action, but sustained the causes of action for nuisance. Both parties have appealed.[1]

■ In its first two causes of action, the State essentially alleged that the continued gradual migration of chemical wastes through the soil and into the surface and ground waters in the nearby environs constitutes a violation of ECL 17-0501, which reads as follows: "1. It shall be unlawful for any person, directly or indirectly, to throw, drain, run or otherwise *discharge* into such waters organic or inorganic matter that shall cause or contribute to a condition in contravention of the standards adopted by the department pursuant to section 17-0301" (emphasis added). Special Term rejected this contention on a finding that the term "discharge" did not "encompass the gradual migration of pollutants through permeable soil and ground and surface water from the original dump site into the surrounding environs" (*State of New York v Schenectady Chems., supra,* p 964). Plaintiff argues that Special Term misconstrued the purpose of the statute in assuming it was designed merely to prevent ongoing unlicensed disposal activities. Instead, plaintiff urges that the statute is result oriented and prohibits the contamination of State water, not simply certain types of present activities from which contamination might result, and thus applies to continued migration of pollutants. In our view, Special Term properly limited application of the statute. The general term "discharge" should be read to embrace activities similar to the specific terms before it (see McKinney's Cons Laws of NY,

---

1. The State has not appealed from so much of the order as dismissed its third cause of action which alleged a violation of ECL 17-1701 (expired Sept. 1, 1973, see L 1973, ch 801, § 17), 17-0803 and 17-0807 for the discharge of wastes without a proper permit.

Book 1, Statutes, § 239). Those terms, "throw", "drain" and "run", connote some active human conduct, as opposed to a mere seepage over the course of time. Additionally, the statute speaks to a "discharge into such waters", which indicates a direct introduction of pollutants into the waters, rather than a migration of pollutants from the soil. Contrary to plaintiff's contention, the phrase "directly or indirectly" modifies the word "person", thereby extending coverage of the statute to one acting through intermediaries. We do not read the phrase as referring to an indirect contamination of State waters, i.e., by migration through the soil. By its terms then, ECL 17-0501 does not embrace a gradual migration of pollutants (see, generally, *State, Dept. of Environmental Protection v Exxon Corp.*, 151 NJ Super 464).

We find support for this conclusion in the legislative history of ECL 17-0501, the substance of which has been on the books since at least 1949 (L 1949, ch 666, § 1; see, also, *Matter of Town of Waterford v Water Pollution Control Bd.*, 5 NY2d 171). The statute previously included the phrase "allowed to seep" as a manner of discharge. In 1961, this phrase was deleted without explanation in an act designed to consolidate responsibility for water pollution control (L 1961, ch 490, § 5). The language was not replaced upon enactment of ECL 17-0501 (L 1972, ch 664, § 2). We deem the omission as purposeful (see McKinney's Cons Laws of NY, Book 1, Statutes, §§ 73, 422, 423). While the phrase "allowed to seep" may have been supportive of the State's argument (see *United States v Price,* 523 F Supp 1055, 1071, affd 688 F2d 204), its omission is indicative of a legislative intent to exclude such manner of pollution from the scope of ECL 17-0501. Additionally, recent enactment of hazardous waste legislation, making provision for the cleanup of inactive hazardous waste sites (see ECL art 27, tit 13) and for redress against responsible parties, impliedly evinces a legislative recognition that ECL 17-0501 is not a mechanism for resolving the dilemma occasioned by seepage from inactive sites (see L 1982, chs 853-858).[2]

---

**2.** To be distinguished is the recent decision in *United States v Waste Inds.* (734 F2d 159, revg 556 F Supp 1301), interpreting section 7003 of the Resource Conservation and Recovery Act of 1976 (US Code, tit 42, § 6973), as extending a remedy for environmental endangerment occasioned by hazardous waste, whether resulting from current conduct or past disposal. Unlike ECL 17-0501, section 7003 was designed by Congress to provide

From the foregoing, we conclude that the gradual migration of pollutants from an inactive site does not constitute a "discharge" within the scope of ECL 17-0501 and that the State's first two causes of action were properly dismissed.

■ We further agree with Special Term's refusal to dismiss the causes of action sounding in nuisance. In reviewing a CPLR 3211 motion to dismiss, we deem the allegations of the complaint to be true and accord them every favorable inference (*MacDonald v Howard,* 91 AD2d 1119, 1120). Affidavits may properly be considered (*Rovello v Orofino Realty Co.,* 40 NY2d 633, 635). We do not hesitate in recognizing that the seepage of chemical wastes into a public water supply constitutes a public nuisance (*Copart Inds. v Consolidated Edison Co.,* 41 NY2d 564, 568; *State of New York v Monarch Chems.,* 90 AD2d 907; *Amax, Inc. v Sohio Ind. Prods. Co.,* 121 Misc 2d 814). Plaintiff submitted an affidavit of a professional engineer stating that the wastes deposited at the Loeffel site are hazardous and migratory, and that, absent proper containment measures, they will likely contaminate the surrounding environment. At least one nearby resident has been forced to discontinue use of water from his well. These conditions provide a sufficient predicate to support the complaint. Moreover, we are not persuaded by any of defendant's arguments to insulate it from liability. The Attorney-General is clearly authorized on behalf of the State to commence legal proceedings to abate a public nuisance (see *State of New York v Monarch Chems.,* 111 Misc 2d 343, 347, mod 90 AD2d 907, *supra;* see, generally, 17 Carmody-Wait 2d, NY Prac, § 107:58, p 333). Nor is the action time barred. Special Term aptly noted a nuisance action continually accrues each day of the wrong, with recovery of monetary damages limited to the three-year period imme-

a broad remedy for abating hazards created by active or inactive hazardous waste disposal sites, and essentially works a codification of the common law of public nuisance revitalized to meet the particular concerns attendant the disposal of hazardous wastes. In view of the broad remedial nature of the Federal legislation, that court's interpretation of the term of "disposal" (US Code, tit 42, § 6903, subd [3]) to extend beyond "ongoing human conduct" (*supra,* p 164) to the migration of chemical wistes through the soil is not dispositive here. Particularly is this so since the term "leaking", included in the definition of disposal under the Federal law but not in the list of terms preceding discharge under ECL 17-0501, was included to extend coverage to "the possibility of endangerment", i.e., the continued migration of chemicals over the course of time (*supra,* p 165).

diately prior to commencement of the action (*Kearney v Atlantic Cement Co.,* 33 AD2d 848; *Amax, Inc. v Sohio Ind. Prods. Co.,* 121 Misc 2d 814, *supra*).

The issue of whether Loeffel acted as defendant's agent or as an independent contractor in disposing of the wastes presents a question of fact not to be resolved at this stage of the proceedings. Even the assumption that Loeffel acted as an independent contractor does not insulate defendant from liability, for an employer may be responsible for the actions of an independent contractor in creating a public nuisance (Restatement, Torts 2d, § 427 B; 3 NY Jur 2d, Agency and Independent Contractors, § 353, p 181). Particularly is this so where the work involved is inherently dangerous, as may reasonably be deemed the case where the disposal of hazardous wastes are involved (see *State, Dept. of Environmental Protection v Ventron Corp.,* 94 NJ 473) and the employer has failed to take proper precautions in selecting a competent party with whom to contract (3 NY Jur 2d, Agency and Independent Contractors, §§ 343, 350, 351). Defendant's contention that common-law nuisance actions have been preempted by recent environmental statutory procedures for abating waste pollution is without merit (*State of New York v Monarch Chems.,* 90 AD2d 907, *supra;* see ECL 17-1101, 27-1313, subd 6; Public Health Law, § 1389-b, subd 6). We further reject defendant's contention that dismissal is warranted for nonjoinder of certain parties whose chemical by-products were allegedly disposed of at the Loeffel site, since nuisance liability is joint and several (17 Carmody-Wait 2d, NY Prac, § 107:59, p 334; see, also, *Simmons v Everson,* 124 NY 319, 323-324). The previous action by the Commissioner of Health against Loeffel in 1968 to enjoin further disposal at the Loeffel site does not bar the instant action on principles of *res judicata,* since the issues of public nuisance and restitution were not previously litigated (see *Shanley v Callanan Inds.,* 54 NY2d 52). Defendant's remaining attempts to avoid liability are equally unpersuasive.

■ Finally, we find that the complaint sets forth a viable cause of action for restitution, notwithstanding the Department of Environmental Conservation's duty under

ECL 3-0301 to enforce the environmental policy of the State (Restatement, Restitution, § 115; see, generally, *Wyandotte Co. v United States,* 389 US 191, 204-205; *Paramount Film Distr. Corp. v State of New York,* 30 NY2d 415, 421, cert den 414 US 829). Such claim for restitution is, of course, limited to the reasonable costs for abatement, not necessarily the amount expended, and does not extend to future costs.

Except as indicated above, we find the order in all other respects proper.

MAHONEY, P. J., KANE, CASEY and MIKOLL, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as granted defendant's motion to dismiss plaintiff's cause of action for restitution, motion to dismiss denied insofar as the cause of action requests restitution for past expenditures, and, as so modified, affirmed.