The STATE OF NEW YORK, Plaintiff,

v.

SOLVENT CHEMICAL COMPANY, INC., ICC Industries, Inc., Mader Capital Corporation, 3163 Buffalo Avenue Corporation, and Corigan Sanoian, Individually and d/b/a Quad Technologies, Inc., Defendants.

SOLVENT CHEMICAL COMPANY, INC., ICC Industries, Inc., and Mader Capital Corporation, Defendants and Third–Party Plaintiffs,

v.

The UNITED STATES of America, E.I. Dupont De Nemours and Company, Occidental Chemical Corporation, The City of Niagara Falls, New York, Frontenac Environmental Services, Inc., Laidlaw Transportation Company, Ltd., Consolidated Rail Corporation, Bema Company, Ltd., Eastman Kodak Company, and General Motors Corporation, Third–Party Defendants.

No. 83–CV–1401C.

United States District Court,
W.D. New York.

March 13, 1995.

Dennis C. Vacco, Atty. Gen. of State of N.Y. (Robert E. Hernan, Asst. New York State Atty. Gen., of counsel), New York City, for the State of N.Y.

Damon & Morey (Paul M. Samson, of counsel), Buffalo, NY, for Solvent Chemical Co., Inc.

David Calverly, Buffalo, NY, for ICC Industries, Inc.

Gellman, Brydges & Schroff (Richard E. Stanton, of counsel), Niagara Falls, NY, for the City of Niagara Falls.

Duke, Holtzman, Yaeger & Photiadis (Peter G. Ruppar, and James L. Duke, of counsel), Buffalo, NY, for Mader Capital Corp.

U.S. Dept. of Justice, Environmental and Natural Resources Div., Environmental Defense Section (David A. Carson, Asst. Atty. Gen., of counsel), Denver, CO, for the U.S.

CURTIN, District Judge.

Currently before the court are (1) a motion by third-party defendant City of Niagara Falls ("the City") to dismiss the amended third-party complaints of Solvent Chemical Co., Inc. ("Solvent"), Item 179, Mader Capital, Inc. ("Mader"), Item 181, and ICC Industries, Inc. ("ICC"), Item 183 (Item 266); (2) a request by the City that if the court finds the amended third-party complaints sufficient to state a cause of action, its motion to dismiss be converted to one for summary judgment against Solvent, Mader, and ICC (Item 299); and (3) a motion by Solvent to exclude from consideration certain evidentiary materials submitted by the City. Item 304. Oral argument on these and other motions was held on December 16, 1994.

## BACKGROUND

Plaintiff, the State of New York, filed suit on December 9, 1983, against Solvent, Mader, ICC, and three other defendants, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and related state law for the costs of investigation and clean-up of a site located at 3163 Buffalo Avenue, Niagara Falls, New York. Item 1. The complaint alleges, inter alia, that Solvent operated an industrial chemical facility at the site from 1972 to 1979; that Solvent sold the site to Transit Holding Corporation ("Transit") in August 1978, but continued to operate there until January 1979; that Mader is a successor in interest to Transit; that ICC is the corporate parent and successor in interest to Solvent; that in the conduct of its operations at the site, Solvent released and disposed of large amounts of hazardous chemicals and chemical wastes onto the land and into the ground water; and that neither Solvent, nor Mader, nor ICC has taken the necessary actions to prevent migration of the chemicals through and off the site, or to abate the existing and threatened harm to

public health and the natural resources of the State.

In June 1986, Solvent, Mader, and ICC filed third-party complaints asserting CERCLA contribution and related claims against various third-party defendants, including the City. Items 42–44. Amended third-party complaints, asserting claims against additional third-party defendants, were filed in April 1994. Items 179, 181, 183.

The amended third-party complaints allege, *inter alia*, that from about 1941 until July 3, 1972, the site was owned by third-party defendant United States; that a chemical manufacturing facility was built at the site, and was operated on behalf of the United States between 1942 and 1945 by third-party defendant E.I. DuPont de Nemours & Co. ("DuPont"), and between 1951 and 1953 by third-party defendant Occidental Chemical Corp. ("OCC") (formerly Hooker Electrochemical Co.); that during the course of operation of that facility, hazardous chemicals were released and/or disposed of at the site; and that to the extent that hazardous chemicals are now present upon or have migrated from the site as alleged by plaintiff New York State, the United States, DuPont and OCC caused or contributed to the contamination. Item 179, ¶¶ 19–31; Item 181, ¶¶ 19–39; Item 183, ¶¶ 18–30.

The City's involvement in this action arises from its ownership of 3163 Buffalo Avenue for a brief period in 1972, when it purchased the site from the United States and resold it to Solvent. The third-party complaints allege that the City owned the site for a period commencing on or about July 3, 1972;[1] that it knew or should have known of the disposal or release of hazardous chemicals there by the United States, DuPont, and OCC; and that to the extent that hazardous substances are present on or have migrated from the site as alleged by plaintiff New York State, the City caused or contributed to the contamination by failing to take steps to treat, contain, or remove the chemicals disposed of or released by the United States, DuPont, and OCC. Item 179, ¶¶ 32–38; Item 181, ¶¶ 40–50; Item 183, ¶¶ 31–37. Based upon these allegations, the third-party complaints assert broadly that the City is liable for violations of CERCLA, Article 17 of the New York Environmental Conservation Law ("NY–ECL"); § 841 of the New York Real Property Actions and Proceedings Law ("NY–RPAPL"), and New York's common law of nuisance. Item 179, ¶ 36; Item 181, ¶ 46–48; Item 183, ¶ 35. Each of the third-party plaintiffs claim that in the event that it is held liable in this action, it will be entitled to a judgment against the City for cost recovery and/or contribution. Item 179, ¶¶ 37–38; Item 181, ¶¶ 49–50; Item 183, ¶¶ 36–37.

On September 7, 1994, the City filed a motion to dismiss, accompanied by a memorandum of law arguing that the third-party complaints fail to state a claim under CERCLA, NY–ECL Article 17, NY–RPAPL, or New York common law. Items 266, 267. Solvent submitted a memorandum in opposition, in which ICC joined. Items 283, 286. On November 7, 1994, the City filed a reply brief, attaching certain evidentiary materials and requesting that if the court found the amended third-party complaints to sufficiently state a cause of action against it, its motion to dismiss be converted to one for summary judgment. Item 299. In response, on November 17, 1994, Solvent moved to exclude from consideration the evidence submitted by the City or, in the alternative, to postpone consideration of the City's motion until Solvent had had sufficient opportunity to conduct discovery, respond to the City's factual assertions, and submit materials in opposition. Item 304.

Meanwhile, on October 7, 1994, the United States filed a memorandum in partial opposition to the City's motion to dismiss the CERCLA claims asserted against it. Item 285. The City had argued that as a former owner of the site, it could be held liable under CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), only if disposal of hazardous substances had taken place during the period in which it owned the site. Item 267, p. 5. It maintained that the third-party complaints

---

1. According to the City, it owned the entire site from June 30 to July 7, 1972. Item 330, p. 2. In addition, it retained a part of the site, approximately 0.7 acres out of a total of about 5.2 acres, until December 8, 1972. *Id.* at 2–3.

contained no allegation that the City or anyone else had introduced hazardous waste onto the site, or moved it around there, at the time the City held title to the site; that the third-party plaintiffs could at best assert the theory that the "passive migration" of hazardous substances constitutes disposal for purposes of § 107(a)(2); and that the court should reject such a theory. *Id.* at 6–15. The purpose of the United States' brief was to oppose the argument that passive migration of hazardous substances does not constitute "disposal" within the meaning of § 107(a)(2). Item 285, p. 2. In the brief, however, the United States also expressed the view that the CERCLA claims against the City should be dismissed because the facts of this case do not establish that there were passive movements of hazardous substances at the site during the period of the City's ownership. *Id.* at 13–14.

The United States' brief generated responses from Mader and Solvent. Items 296, 301. In a letter to the court dated November 3, 1994, Mader indicated that it had not intended to take a position with respect to the City's motion, but that it opposed the United States' request that the court make a factual finding that no passive movements of hazardous chemicals occurred during the time the City owned the site. Item 296. Such a finding, it argued, would imply that the property had not been previously contaminated by the United States, Occidental, and DuPont. *Id.* It would be inappropriate, it argued, for the court to make such a determination as part of a ruling on the City's Fed.R.Civ.P. 12(b)(6) motion. *Id.* In a letter to the court dated November 7, 1994, Solvent took a similar position. Item 301.

Following oral argument on December 16, 1994, the court issued an order giving the City, Solvent, and the other parties the opportunity to file additional affidavits and briefs in support of or in opposition to the City's motion. Item 322. Solvent and the City have done so. Items 324, 330. *See also,* letter to the court from Solvent's counsel, dated January 5, 1995.

### DISCUSSION

#### 1. The City's Motion to Dismiss

Fed.R.Civ.P. 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The objective of the rule is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). "[F]ederal pleading is by statement of claim, not by legal theory." *Flickinger v. Harold C. Brown & Co., Inc.,* 947 F.2d 595, 600 (2d Cir.1991). Generally, a complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102. In considering a Fed.R.Civ.P. 12(b)(6) motion, therefore, the court's focus is on whether the complaint states a claim upon which relief may be granted, and whether it gives the defendant fair notice of the basis for the claim.

#### a. Liability under CERCLA

■ The third-party plaintiffs' CERCLA claims against the City are premised on the City's brief period of ownership of 3163 Buffalo Avenue in 1972. Under the relevant statutory provision, CERCLA § 107(a)(2), a former owner may be held liable for response costs under the Act only if it was an owner "at the time of disposal of any hazardous substance." 42 U.S.C. § 9607(a)(2). The amended third-party complaints fail to allege that disposal of a hazardous substance occurred while the City owned 3163 Buffalo Avenue. Consequently, the claims asserted against the City under CERCLA must be dismissed.

As indicated above, the City speculated in its motion papers that the third-party plaintiffs were premising their CERCLA claims on a theory that passive migration of hazardous substances constitutes "disposal" for purposes of CERCLA § 107(a)(2). It then argued at length that the court should reject such a theory. This argument provoked extensive briefing by Solvent and the United States. Item 283, pp. 14–21; Item 285. I need not, however, reach the issue. A care-

ful review of Solvent's amended third-party complaint reveals that it alleges (1) that the City owned the site for a period commencing on or about July 3, 1972; Item 179, ¶ 33; (2) that the City "knew or should have known that Hooker, DuPont and the United States ... had used hazardous substances and chemicals at the ... site, and that such substances *had been released and/or disposed of on and around the property;* " *Id.,* ¶ 34 (emphasis added), (3) that "to the extent that hazardous substances and chemicals *are present upon or have migrated from the ... site as alleged in plaintiff's Complaint,* [the City] *caused or contributed to the alleged contamination and migration by failing to treat, monitor, safeguard, contain or remove said hazardous substances and chemicals to prevent their migration* ... or to take any other action sufficient to assess, remedy or abate the damages caused by said hazardous substances and chemicals ..." *Id.,* ¶ 35 (emphasis added). Almost identical allegations are made by Mader and ICC. Item 181, ¶¶ 41–45; Item 183, ¶¶ 32–34. The thrust of the claims is that the City may be held liable because it knew or should have known that the site was contaminated with hazardous substances, and it failed to take precautionary measures to ensure that migration would not, at some point, take place. But there is simply no allegation that disposal of hazardous substances, whether by passive migration or by other means, actually occurred during the time that the City owned the site. The amended third-party complaints therefore fail to state a claim against the City under CERCLA § 107(a)(2).

**b. *Liability under NY–ECL Article 17***

■ Plaintiff New York State's NY–ECL Article 17 claims against the defendants in this action, and thus the third-party plaintiffs' NY–ECL Article 17 claims against the City, are based upon the language of NY–ECL § 17–0501, which provides that:

It shall be unlawful for any person, directly or indirectly, to throw, drain, run or otherwise discharge into [the waters of the state] organic or inorganic matter that shall cause or contribute to a condition in contravention of the standards adopted by

the [Department of Environmental Conservation] pursuant to section 17–0301.

In moving to dismiss, the City again speculates that the third-party plaintiffs' claims are founded on the theory that passive migration of pollutants took place during the period of the City's ownership of 3163 Buffalo Avenue. Item 267, p. 16. It argues that passive migration of pollutants does not constitute discharge for purposes of § 17–0501, citing *State v. Schenectady Chemicals, Inc.,* 103 A.D.2d 33, 479 N.Y.S.2d 1010 (3d Dept. 1984) (holding that § 17–0501 does not embrace the gradual migration of pollutants from an inactive waste disposal site). *Id.* at 16–17. Solvent responds by arguing that *Schenectady Chemicals* was wrongly decided, and is an unreliable precedent. Item 283, pp. 22–23.

I need not reach the issue of whether passive migration may violate NY–ECL § 17–0501. Again, the amended third-party complaints simply fail to allege that any such migration took place while the City owned the site. Neither do they allege that the City engaged in any other conduct prohibited by § 17–0501. The amended third-party complaints therefore fail to state a claim against the City under NY–ECL § 17–0501.

**c. *Liability under New York Public Nuisance Law***

■ In moving to dismiss the third-party plaintiffs' claims under NY–RPAPL § 841 and New York's common law of nuisance, the City argues that it may be held liable under a public nuisance theory only if (1) any wastes that may have been present on the site at the time the City owned it constituted a nuisance, and (2) at the time it owned the property, the City "learned or should have learned of the condition and failed to take reasonable steps to abate [it]." Item 267, pp. 18–19. It contends that there are no such allegations in the amended third-party complaints, and the nuisance claims must therefore be dismissed. *Id.* at 18–20.

In response, Solvent maintains that it adequately alleged in paragraphs 34 and 35 of its amended third-party complaint that the City knew or should have known of the contami-

nation of the site, and failed to take sufficient action in response. Item 283, pp. 21–22.

"[T]he release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law." *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985). Generally, a landowner is subject to liability for maintaining a public nuisance on his property "irrespective of negligence or fault." *Id.*

> [L]iability [of a possessor of land] is not based upon responsibility for the creation of the harmful condition, but upon the fact that he has exclusive control over the land and the things done upon it and should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others. Thus a vendee ... of land upon which a harmful physical condition exists may be liable under the rule here stated for failing to abate it after he takes possession, even though it was created by his vendor, lessor or other person and even though he had no part in its creation.

*Id.* (quoting *Restatement (Second) of Torts,* § 839, comment d (1979)). However, an owner "who passively continues a public nuisance created by a previous owner cannot be held absolutely liable for injuries sustained as a result of that nuisance unless it is established that he had actual or constructive notice of the existence of the nuisance." *Kuenzler v. Village of South Nyack,* 133 A.D.2d 100, 101, 518 N.Y.S.2d 638, 639 (2d Dept. 1987), *appeal denied,* 71 N.Y.2d 803, 527 N.Y.S.2d 769, 522 N.E.2d 1067 (1988); *see also, Corby v. Ramsdell,* 48 F.2d 701, 702 (2d Cir.1931).

▪ Under New York law, one who creates a public nuisance cannot avoid liability by selling the property on which the nuisance was created. *State v. Ole Olsen, Ltd.,* 38 A.D.2d 967, 968, 331 N.Y.S.2d 761, 763 (2d Dept.1972) ("[NY–RPAPL § 841] specifically

authorizes the prosecution of an action against both the creator of a nuisance on real property and his grantee to abate the nuisance and for damages resultant therefrom"); *United States v. Hooker Chemicals and Plastics Corp.,* 722 F.Supp. 960, 968–70 (W.D.N.Y.1989). It seems likely, therefore, that the New York courts would hold, by extension, that one who passively continues a public nuisance created by a prior owner, and then resells the property upon which the nuisance exists (so becoming an "intermediate owner"), could be held liable for abatement of the nuisance and for damages unless he had no actual or constructive notice of the existence of the nuisance at the time he owned the property.

Applying these rules to the present case, the City, as an "intermediate owner" of 3163 Buffalo Avenue, could be found liable for the maintenance of a public nuisance if the third-party plaintiffs are able to show (1) that at the time the City owned the site, there was a release or threat of release of hazardous wastes, or that the condition of the site was otherwise such that a public nuisance existed there, (2) that the City had actual or constructive knowledge of the existence of a public nuisance, and (3) that it failed to take adequate steps to remedy the condition. Each of these elements is plainly alleged in the amended third-party complaints. Item 179, ¶¶ 33–36; Item 181, ¶¶ 41–45, 47; Item 183, ¶¶ 32–35. The complaints therefore sufficiently state public nuisance claims against the City.[2]

### 2. The City's Request for Summary Judgment

The City has requested that in the event that the court finds the third-party complaints to sufficiently state a cause of action against it, its motion to dismiss be converted to one for summary judgment. Item 299. Solvent has objected on a variety of grounds. Item 304. Both the City and Solvent have submitted evidentiary materials, which relate to whether chemical wastes were present at

---

**2.** The City does not contest the third-party plaintiffs' standing to bring such claims. I note, however, that as private parties who may be liable for response costs under CERCLA, they may be able to show that they have suffered harm of the kind necessary to establish standing to maintain a public nuisance action. *See Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 737 F.Supp. 1272, 1281 (W.D.N.Y.1990).

3163 Buffalo Avenue at the time the City owned the site; to whether the City knew or should have known about the presence of any such wastes; and to the circumstances of the City's acquisition of the site, and of its transfer to Solvent. Item 299, Exs. B, C; Item 324; Item 330. *See also,* letter to the court from Solvent's counsel, dated January 5, 1995.

■ Since the amended third-party complaints fail to state a cause of action against the City under CERCLA or NY–ECL Article 17, the City's request that its motion be considered as one for summary judgment applies only to the third-party plaintiffs' public nuisance claims. Upon review of the materials submitted by the City and Solvent, I am satisfied that at the present time there is a genuine issue of material fact as to whether or not a public nuisance existed at 3163 Buffalo Avenue at the time the City owned the site, and as to whether the City had actual or constructive knowledge of any such nuisance. The City's motion for summary judgment must therefore be denied.

### CONCLUSION

For the reasons given above, the third-party plaintiffs' claims against the City under CERCLA and NY–ECL Article 17 are dismissed. Insofar as the amended third-party complaints state public nuisance claims, the City's motion to dismiss is denied. On the present record, there is a genuine issue of material fact precluding summary judgment on the public nuisance claims asserted against the City. The City's request that it be granted summary judgment on those claims is therefore denied.

So ordered.