

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-25-2003

# Outlet City Inc v. West Chem Prod Inc

Precedential or Non-Precedential: Non-Precedential

Docket 02-2055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Outlet City Inc v. West Chem Prod Inc" (2003). *2003 Decisions.* Paper 720.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/720

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2055
_____

OUTLET CITY, INC.,

Appellant

v.

WEST CHEMICAL PRODUCTS, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable Dennis Cavanaugh
(D.C. Civil No. 91-cv-1564)
_____

Argued: December 12, 2002

Before: FUENTES, STAPLETON, <u>Circuit Judges</u>, and O'KELLEY,* <u>District Judge</u>.

(Opinion Filed: March 24, 2003)

_____

OPINION

_____

_____

*Hon. William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1

John M. Scagnelli, Esq. (argued)
Scagnelli & Hollenbeck
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07071

Attorney for Appellant

Keith A. Onsdorff, Esq. (argued)
Reed Smith
136 Main Street
Princeton Forrestal Village, Suite 250
Princeton, NJ 08540

Attorney for Appellee

FUENTES, Circuit Judge:

In this case, Outlet City, Inc. ("Outlet City") brought this Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., action in order to recover the costs it has incurred in relation to the clean-up of hazardous waste on the property it purchased 25 years ago from West Chemical Products, Inc. ("West"). For the reasons that follow, we are unwilling to sustain, without further analysis and findings, the two articulated bases for the District Court's decision granting judgment to West on the CERCLA claim. We do, however, affirm the District Court's grant of judgment to West on the ultrazardous activity claim.

I.

In November 1978, Outlet City bought four acres of property in Queens, New York, ("the Property") from West for $586,000. West had owned the Property since 1901, and operated a facility that manufactured chemicals and household products such as disinfectants, insecticides, soaps, etc. West used various chemicals including, but not limited to, creosote,

acids, de-greasing solvents, iodine, and petroleum. It stored the products and chemicals in aboveground and underground storage tanks.

After West vacated the Property, Outlet City used it for commercial and retail purposes. In 1988, AKRF, Inc. ("AKRF"), an environmental consulting firm, performed an environmental study of the Property on behalf of Hartz Associates, a company interested in buying the Property from Outlet City. The 1988 AKRF study indicated that contamination might exist at the Property. In 1990, after further study, Outlet City concluded that there was creosote and that petroleum contamination had, in fact, occurred.

In April 1991, Outlet City filed a complaint against West asserting a claim under Section 107 of CERCLA, inter alia, to recover costs incurred as a result of the environmental mess allegedly caused by West. In July 1994, Outlet City amended the complaint to state the following claims: 1) Section 107(a)(1) and (a)(2) CERCLA liability, 42 U.S.C. §§ 9607(a)(1), (a)(2); 2) ultrahazardous activity (abnormally dangerous activity); 3) negligence; 4) willful and wanton conduct and gross negligence; 5) fraudulent concealment; 6) nuisance; 7) trespass; and 8) New York Oil Spill Act ("Oil Spill Act") violation, N.Y. Navig. Law §§ 181(1), (5).

In March 1996, Outlet City began negotiations with the New York State Department of Environmental Conservation ("NYSDEC") to develop a remedial program for the Property. In October 1996, Outlet City and the NYSDEC signed an agreement that consisted of 1) implementation of an Interim Remedial Measure Plan ("IRM") for the recovery of creosote on the Property; and 2) implementation of the Supplemental Site Assessment/Remedial Investigation Work Plan for the Property. The NYSDEC later found these plans to be lacking,

3

and in March 2000, Outlet City promised to replace its IRM with a more effective remediation plan.

On September 30, 1998, after the case had been reassigned to Judge Greenaway, Jr., the District Court denied the parties' cross motions for partial summary judgment on the CERCLA and Oil Spill Act claims because there were material, disputed facts with respect to each. On September 27, 2000, the case was reassigned to Judge Cavanaugh. On April 26, 2001, the parties agreed to dismiss the fraudulent concealment claim, and on October 23, 2001, Judge Cavanaugh adopted Magistrate Judge Haneke's recommendation to dismiss counts 3, 4, 6, and 7. Beginning on October 23, 2001, the remaining claims (CERCLA, ultrahazardous activity, and Oil Spill Act) were tried before Judge Cavanaugh. The bench trial concluded on October 26, 2001.

On March 20, 2002, the District Court issued an opinion granting judgment to West on all three claims. The case was closed on March 25, 2002, and Outlet City filed a timely notice of appeal on April 15, 2002.

## II.

The District Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Outlet City appeals from a final order and judgment of the District Court. We, therefore, have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's legal conclusions de novo and its factual findings for clear error. Lanning v. Southeastern Pennsylvania Transp. Auth., 308 F.3d 286, 290 (3d Cir. 2002).

## III.

Outlet City appeals the District Court's grant of judgment to West on its CERCLA claim. We have addressed the purpose of CERCLA in various contexts. We have found that "[i]n response to widespread concern over the improper disposal of hazardous wastes, Congress enacted CERCLA, a complex piece of legislation designed to force polluters to pay for costs associated with remedying their pollution. . . ." United States v. Alcan Aluminum Corp. et al., 964 F.2d 252, 258 (3d Cir. 1992) (citations omitted). "CERCLA is a remedial statute which should be construed liberally to effectuate its goals." Id. at 258. At issue in this case is Section 107 of CERCLA. That section provides in pertinent part:

> (a)    Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
>        (1) the owner and operator of a vessel or a facility,
>        (2) any person who at the time of disposal or any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . or
>        (4) . . . . shall be liable for –
>              (B) *any other necessary costs of response incurred by any other person consistent with the national contingency plan.*

42 U.S.C. §§9607(a)(1),(2),(B) (emphasis added).    This Court has said that Section 107 liability is imposed where the plaintiff establishes the following four elements: 1) the defendant falls within one of the four categories of "responsible parties"; 2) the hazardous substances are disposed at a "facility"; 3) there is a "release" or "threatened release" of hazardous substances from the facility into the environment[1]; and 4) the release causes the

---

[1]CERCLA defines release as: "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding or barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . [exceptions omitted]." 42 U.S.C. §9601(22).

incurrence of "response costs.[2]" Alcan Aluminum, 964 F.2d at 259. If a plaintiff proves all four elements and the defendant does not prove one of the three statutory defenses, CERCLA imposes strict liability on the defendant. Id.

The District Court granted judgment to West after concluding that Outlet City failed to meet its burden of proving 1) a "release" and 2) NCP-compliant "response costs." We will discuss these conclusions in turn.

## A. "Release"

The District Court determined that there was no liability-producing "release" for three reasons: 1) Outlet City had an opportunity to inspect the Property before purchasing it, but failed to conduct environmental studies, and the sale contract contained no contingency to accommodate later disclosures of contamination; 2) Outlet City stored heating fuel on the Property in the same tanks used by West and the hydrocarbon studies showed that the petroleum contamination was not attributable to West's ownership of the land; and 3) there were several other possible sources of contamination, including the asphalt covering the Property, adjacent railroad and other industrial facilities, and Outlet City did not present evidence to eliminate the possibility that hazardous substances came from sources other than West's manufacturing operations. (D. Ct. Op., pp. 8-9)

---

[2]CERCLA defines "respond" or "response" as: "remove, removal, remedy, and remedial action . . .all such terms . . . include enforcement actions related thereto." 42 U.S.C. §9601(25). A removal action is different than a remedial action. A removal action is intended to remove the hazardous waste from the area in the short term – a quick fix. A remedial action involves a long-term effort to remedy the damage done to the environment. See 42 U.S.C. §§9601(23), (24).

The District Court's first two reasons for finding no "release" are not applicable because: (1) Outlet City's knowledge that the Property was contaminated when it bought it from West has no bearing on whether there was a "release;" and (2) because liability for petroleum spills is excluded from CERCLA under 42 U.S.C. §9601(14). The third reason is based on the court's interpretation of Section 107. Implicit in the District Court's conclusion that West is not liable for the "release" is the idea that Outlet City did not prove that West released the contaminants *which led to the response costs incurred by Outlet City*. In other words, in the legal analysis of the "release" element, the District Court determined that there must be causation between the release by West and the response costs incurred by Outlet City. But this Court has held that the only causation required under CERCLA is that the release of hazardous substances at the "facility" cause the response costs; a plaintiff does not need to prove that the defendant's waste caused the response costs under Section 107. Alcan Aluminum, 964 F.2d at 264-266. Therefore, we cannot sustain the District Court's conclusion that there was no "release."

B. Compliance with the National Contingency Plan

Section 107 provides that "response costs" can only be recovered from "responsible parties" when they were: 1) necessary; and 2) consistent with the National Contingency Plan ("NCP"). 42 U.S.C. §9607(a)(4)(B). With respect to consistency with the NCP, 40 C.F.R. §300.700 provides in pertinent part:

> (c)(3) For the purpose of cost recovery under section 107(a)(4)(B) of CERCLA:
>
> > (i) A private party response action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial

7

compliance with the applicable requirements in paragraphs (5) and (6) of this section, and results in a CERCLA-quality cleanup; and

(4) Actions under § 300.700(c)(1) . . . and (c)(2) will not be considered "not consistent with the NCP" based on immaterial or insubstantial deviations from the provisions of 40 CFR part 300.

Paragraphs (5) and (6) of 40 C.F.R. §300.700(c) set forth the procedural requirements for an NCP-compliant cleanup effort by reference to other sections of the CFR. They include requirements about worker health and safety, documentation of costs, permits, reports, removal site evaluation, remedial site evaluation, and opportunity for meaningful public comment.

The District Court concluded that Outlet City's "response costs" were not in "substantial compliance" with the NCP for the following reasons: 1) Outlet City did not properly document the cost of actions taken (other than legal fees, which were documented but not legally justified); 2) Outlet City did not conduct a timely, effective, or comprehensive site evaluation; 3) with regard to the removal of groundwater contaminants, there was no substantial compliance because Outlet City only removed 15% or less of the product to be recovered and the NYSDEC admonished it for not doing better; 4) Outlet City failed to prove that any permanent measures consistent with removal of the hazardous substance have been initiated or completed. (D. Ct. Op., pp. 11-12)

Focusing on the third and fourth reasons, it is clear that the District Court improperly equated "substantial compliance" with "substantial amount of removal or remediation." That is not the standard codified in the C.F.R. under the NCP. The NCP does not require that a

8

cleanup be substantially complete when an action is filed. The NCP requires only "substantial compliance" with the procedural requirements of the statute.

Although the other two reasons are legitimate NCP non-compliance concerns, the District Court did not consider evidence presented by Outlet City in concluding that these steps weren't taken. For example, the District Court did not address the testimony of Outlet City's expert that its expenditures were "reasonable, necessary and substantially compliant" with the NCP (App. 759-760), and did not reference any evidence to the contrary. Given that there is ample documentation of Outlet City's expenditures in the record, and particularly based on the testimony of its expert, the District Court's opinion does not enable us to meaningfully review the judgement. In addition, the District Court's conclusion may run afoul of the instruction in the NCP that strict compliance is not required. In fact, if the procedural deviations are "immaterial or insubstantial" they should not be deemed inconsistent with the NCP. 40 C.F.R. §300.700(c)(4). At a minimum, Outlet City presented sufficient evidence to warrant a more comprehensive analysis.[3]

IV.

Outlet City also appeals the District Court's grant of judgment to West on its ultrahazardous activity claim. The New York law on the tort of ultrahazardous activity is clear. "Determining whether an activity is abnormally dangerous involves multiple factors. Analysis of no one factor is determinative. Moreover, even an activity abnormally dangerous under one

---

[3]West contended at oral argument that Outlet City was not an "innocent party" and therefore was not entitled to recover under Section 107. New Jersey Turnpike Auth. v. PPG Indus., 197 F.3d 96, 104 (3d Cir. 1999); New Castle County v. Halliburton, 111 F.3d 1116, 1122-24 (3d Cir. 1997). This argument was not raised in the District Court, and we express no opinion with respect to it.

set of circumstances is not necessarily abnormally dangerous for all occasions. . . . Particularly useful are the six criteria listed in Restatement of Torts Second (section 520): 'a) existence of a high degree of risk of some harm to the person, land or chattels of others; b) likelihood that the harm that results from it will be great; c) inability to eliminate the risk by the exercise of reasonable care; d) extent to which the activity is not a matter of common usage; e) inappropriateness of the activity to the place where it is carried on; and f) extent to which its value to the community is outweighed by its dangerous attributes." Doundoulakis v. Town of Hempstead et al, 42 N.Y.2d 440, 448 (NY 1977) (citing Restatement (Second) of Torts § 520)).

The District Court provided three reasons for concluding that West was not liable for an ultrahazardous activity: 1) Outlet City presented "no facts or witnesses" to prove that West's manufacturing activity was abnormally dangerous or presented a higher degree of risk than usual; 2) Nino Tassi, an employee of West from the 1950's until 1978, testified that he required no medical attention or protective clothing at work and he never saw warning signs about chemical hazards; and 3) West's manufacturing activity was an appropriate activity given the location of the Property in an industrial area. (D. Ct. Op., p. 13)

We focus on the first and the third reasons, which are Restatement factors, and which we find to be persuasive. Outlet City's only argument to the contrary is that the District Court should have determined as a matter of law that the chemical storage and clean-up activities of West were abnormally dangerous. In support of that proposition, Outlet City cites State of New York v. Shore Realty Corp., 759 F.2d 1032 (2d Cir. 1985) and State of New York v. Schenectady Chemicals, 479 N.Y.S.2d 1010 (3d Dept. 1984).

10

Shore Realty and Schenectady Chemicals are easily distinguished. First, they involve claims of public nuisance rather than ultrazardous activity. Although the courts in those cases found the manufacturing activity at issue to be a public nuisance, that does not mean that the manufacturing activity in this case, even if identical, was abnormally dangerous. In any event, whether a certain kind of manufacturing activity was abnormally dangerous in the place where it occurred is a highly fact-sensitive question that cannot be determined as a matter of law by comparison to other highly fact-sensitive cases. Accordingly, we affirm the District Court's decision on the ultrahazardous activity claim.

V.

For the foregoing reasons, we affirm the District Court's grant of judgment to West on the ultrazardous activity claim. Because we are unwilling to sustain, without further analysis and findings, the two articulated bases for the decision, namely that (1) no "release" was proven and (2) there was no substantial compliance with the NCP, we vacate the District Court's grant of judgment to West on the CERCLA claim. Accordingly, we remand this matter to the District Court to reconsider its decision in light of our opinion, based upon the existing trial record or after developing a supplementary record as the court may deem just and proper.

/s/ Julio M. Fuentes
Circuit Judge

11